**SO ORDERED.**

**SIGNED this 22 day of June, 2012.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| MAINLINE CONTRACTING, INC., | CASE NUMBER: 09-07927-8-RDD |
| **DEBTOR** | |

| | |
|---|---|
| RICHARD D. SPARKMAN, TRUSTEE, | ADVERSARY PROCEEDING NUMBER: 11-00262-8-RDD |
| **Plaintiff** | |
| v. | |
| JOHNSON CONCRETE COMPANY, | |
| **Defendant** | |

### ORDER

Pending before the Court is the Motion for Summary Judgment and the accompanying Memorandum of Law filed by Richard D. Sparkman, Trustee (the "Trustee") on March 29, 2012 (the "Motion for Summary Judgment"); the Memorandum of Law in Response and Opposition to Plaintiff's Motion for Summary Judgment filed by Johnson Concrete Company (the "Defendant") on April 19, 2012; the Cross Motion for Summary Judgment filed by Johnson Concrete Company on March 30,

2012 ("Cross Motion for Summary Judgment"); and the Objection to Defendant's Motion for Summary Judgment and Memorandum in Support Thereof filed by the Trustee on April 13, 2012. The Court conducted a hearing on May 8, 2012 in Wilson, North Carolina to consider these matters.

## JURISDICTION

Subject matter jurisdiction and jurisdiction over the parties exists pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference of the United States District Court for the Eastern District of North Carolina dated August 3, 1984.

This matter is a core proceeding as set forth in Section 157(b)(2) of Title 28 of the United States Code.

## STANDARD FOR SUMMARY JUDGMENT

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate. However, if there are genuine issues of material fact, then summary judgment is not appropriate

## STATEMENT OF THE CASE

Mainline Contracting, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 15, 2009. The bankruptcy case was converted to a proceeding under Chapter 7 on October 15, 2009, and Richard D. Sparkman was duly appointed as the Chapter 7 Trustee. On July 8, 2011, the Trustee filed this adversary proceeding pursuant to 11 U.S.C. § 547

and 11 U.S.C. § 548 seeking to avoid and recover payments totaling $36,592.24 allegedly made to the defendant within ninety (90) days of the petition date as preferential and, alternatively as fraudulent. On August 8, 2011, the Defendant filed an answer asserting various defenses arising under 11 U.S.C. § 547(c), among others.

    The Defendant is a building supply company, which sells materials and supplies to customers in the construction industry. The Defendant was a subcontractor of the Debtor on several construction projects. Within ninety (90) days prior to the petition date, the Debtor made three payments to the Defendant totaling $36,592.24. The payments are as follows:

| Check Number | Amount | Date Received | Applied to Invoices |
| --- | --- | --- | --- |
| 033939 | $23,164.37 | 06/22/2009 | 59589, 59590, 59641 |
| 034087 | $1,473.15 | 07/20/2009 | 59833 |
| 034428 | $11,954.72 | 07/31/2009 | 59719, 59892, 60028, 60029 |
| TOTAL | $36,592.24 | | |

    These payments were applied to invoices issued by Johnson Concrete for materials delivered to the Debtor at various projects as follows:

| Invoice Number | Amount | Invoice Date | Project |
| --- | --- | --- | --- |
| 59589 | $1,590.58 | 01/15/2009 | Union County High School |
| 59590 | $10,016.73 | 01/15/2009 | Lawyers Road Extension |
| 59641 | $11,557.06 | 01/31/2009 | Lawyers Road Extension |
| 59833 | $1,473.15 | 03/15/2009 | Glenn View Station |
| 59719 | $7,186.41 | 02/15/2009 | Clemmonsville Road |
| 59892 | $2,902.53 | 03/31/2009 | Quail Crossing |

| 60028 | $478.03 | 04/30/2009 | Clemmonsville Road |
| 60029 | $1,387.75 | 04/30/2009 | Clemmonsville Road |

The Hanover Insurance Company ("Hanover") issued payment bonds on behalf of the Debtor on several projects including "Lawyers Road Extension"; "Gold Park-Town of Hillsborough Community Park"; "Site Work for Bloom . . ."; "Union County High School and Middle School"; "Walmart Glenn View Station"; and the "Grading, Drainage, Utilities, Paving and Pavement Markings . . ."

The Trustee filed a motion for summary judgment requesting the Court to enter judgment in favor of the Trustee as to: 11 U.S.C. § 547(b); the Defendant's claimed defense under 11 U.S.C. §§ 547(c)(1); 547(c)(2); 547(c)(4); 550(b)(1); and the Defendant's claimed defense of "bonded projects." The Defendant filed a motion for summary judgment requesting the Court enter judgment in favor of the Defendant as to its defenses under 11 U.S.C. §§ 547(c)(1); 547(c)(2) and a partial defense pursuant to 11 U.S.C. § 547(c)(4).

At the hearing, counsel for the Trustee and counsel for the Defendant agreed that the main issues for the Court to consider when determining whether summary judgment is appropriate are: (1) whether the defendant has a defense under the indirect transfer theory pursuant to 11 U.S.C. § 547(c)(1) and *Angell v. Pennington, Inc.* (*In re Partitions Plus of Wilmington, Inc.*), No. 06-00148-8-JRL (Bankr. E.D.N.C. Mar. 20, 2008); and (2) whether the payments by the Debtor were made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2). The Trustee concedes that the Defendant is entitled to a "new value" defense pursuant to section 11 U.S.C. § 547(c)(4) as to $4,944.13 of the payments. Further, the Trustee concedes that the transfers do not constitute fraudulent transfers subject to avoidance under 11 U.S.C. § 548(a)(1)(B).

## **DISCUSSION**

The Trustee seeks to avoid as a preference the three payments made by the Debtor to the Defendant. Section 547(b) of the Bankruptcy Code provides that the trustee may avoid certain preferential transfers made by the debtor to certain creditors. To avoid the transfers the trustee must establish the transfers (1) were to or for the benefit of a creditor; (2) were for or on account of an antecedent debt; (3) were made while the debtor was insolvent; (4) were made within ninety (90) days before filing of the debtor's bankruptcy; and (5) enables the creditor to receive more than it would receive if the transfers had not been made.  11 U.S.C. § 547(b).

The Trustee bears the burden of proving the avoidability of the transfers pursuant to 11 U.S.C. § 547(b).  The Court holds the Trustee has shown that no genuine issue of material fact exists and therefore has established the elements under 11 U.S.C. § 547(b) as a matter of law for preferential transfers totaling $36,592.24, with a credit due of $4,944.13 for new value extended to the Debtor. Subject to defenses, the maximum recovery for the Trustee would be $31,648.11.

As for defenses, the Code exempts certain transfers from the trustee's avoidance power. *See* § 547(c)(1)-(5). In the summary judgment context, the moving party must demonstrate that there are no genuine issues of material fact regarding its entitlement to one of the exceptions.  *Simon v. Gerdau MacSteel, Inc.* (*In re Am. Camshaft Specialties, Inc.*,  444 B.R. 347, 352 (Bankr. E.D. Mich. 2011)).

**I. Indirect Transfer Theory:**

 The Defendant asserts that the preferential transfers are not avoidable pursuant to 11 U.S.C. § 547(c)(1) and the "indirect transfer" theory as set forth in *Angell v. Pennington, Inc.* (*In re Partitions Plus of Wilmington, Inc.*), No. 06-00148-8-JRL (Bankr. E.D.N.C. Mar. 20, 2008). Section 547(c)(1) provides that a transfer is not avoidable by the trustee as a preferential payment to the extent that such transfer was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was

made to be a contemporaneous exchange for new value given to the debtor; and (B) [was] in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1).

"New value" is defined as:

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2). The burden is on the Defendant to demonstrate the existence of the affirmative defense under 11 U.S.C. § 547(c)(1). *In re J.A. Jones, Inc.*, 361 B.R. 94, 99 (Bankr. W.D.N.C. 2007).

The "indirect transfer" theory is based on the assumption that "had a debtor general contractor not paid a subcontractor for work performed on a project secured by a payment bond, the subcontractor would have filed a bond claim. The bonding company, who would be forced to pay the subcontractor, would then seek indemnification from the owner for funds owed to the debtor general contractor." *Angell v. Pennington, Inc.* (*In re Partitions Plus of Wilmington, Inc.*), No. 06-00148-8-JRL at 5 (Bankr. E.D.N.C. Mar. 20, 2008). When the debtor makes an otherwise preferential payment to the subcontractor, the debtor pays off what would otherwise be the subcontractor's claim and lawsuit against the payment bond, and "the debtor general contractor's estate is not diminished to any greater degree by the preferential payment to the subcontractor than it would have been had the subcontractor enforced its right to collect on the project bond and prevented the funds from ever reaching the debtor's estate." *Id.*

Under *Angell v. Pennington*, to establish a new value defense using an "indirect transfer" theory, the Defendant must show that "(1) it would have timely filed a claim against the project's payment bond and been paid in full had it not received payment from the debtor, and (2) at the time, the debtor was still owed funds by the general contractor on which the bonding company could have

asserted a lien." *Id.* at 5-6. The Defendant must also show that new value was given to the Debtor as part of a contemporaneous exchange. *United Rentals, Inc. v. Angell*, 592 F.3d 525, 533 (4th Cir. 2010) *cert. denied*, ___ U.S. ____, 131 S.Ct. 121, 178 L.Ed. 2d 32 (2010).

Both the Trustee and the Defendant acknowledge that at the time of the transfers the Debtor was still owed funds by the general contractor on which the bonding company could have asserted a lien. The question remains as to whether the Defendant would have timely filed a claim against the project's payment bond and been paid in full had it not received payment from the Debtor.

The Defendant "must present more than a mere modicum of evidence to support its contentions." *Angell v. United Rentals, Inc.* (*In re Partitions Plus of Wilmington, Inc.*), 2008 WL 934062 at * 1 (Bankr. E.D.N.C. Mar. 31, 2008). In *Angell v. Pennington*, the Bankruptcy Court found that the defendant sufficiently showed through convincing testimony that at the time of the transfers it would have filed a bond claim and also established a "stated policy of addressing all overdue invoices in a manner that protected his ability to file a bond or lien claim, and the fact that he filed a bond clam and was paid in full in the only other instance of nonpayment." *Angell v. United Rentals, Inc.* (*In re Partitions Plus of Wilmington, Inc.*), 2008 WL 934062 (Bankr. E.D.N.C. Mar. 31, 2008) (citing *Angell v. Pennington, Inc.* (*In re Partitions Plus of Wilmington, Inc.*), No. 06-00148-8-JRL at 8 (Bankr. E.D.N.C. Mar. 20, 2008)).

Subsequent to *Angell v. Pennington*, the Fourth Circuit in *United Rentals, Inc. v. Angell*, addressed the issue of whether a supplier could assert a §547(c)(1) affirmative defense under the "indirect transfer theory" against the debtor-subcontractor. 592 F.3d 525, 532 (4th Cir. 2010) *cert. denied*, ___ U.S. ____, 131 S.Ct. 121, 178 L.Ed. 2d 32 (2010). There, the chapter 7 trustee sought to avoid and recover, as preferential, three payments made by the debtor-subcontractor to the company that supplied it with rental equipment on several projects. The supplier argued that it had established

a § 547(c)(1) defense under the "indirect transfer theory." *Id.* Specifically, the supplier argued that the transfers were in exchange for new value because they had the effect of discharging the supplier's right to file and enforce a mechanic's lien against the debtor. *Id.* at 529. Further, the supplier argued that the debtor was paid money that would have otherwise been directed to the supplier because the supplier did not enforce its mechanic's lien. *Id.* at 532.

The Fourth Circuit found that "regardless of whether the transfers set in motion a chain of events that resulted in the [d]ebtor's recoupment of the amounts paid, [the supplier] did not show that such new value was given to the debtor . . . as part of a contemporaneous exchange." *Id.* at 533 (internal quotations omitted). The Court cited to *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 399-400 (5th Cir. 2005) which noted "it is the precise benefit received . . . , and not the secondary or tertiary effects thereof, that must fit within one of the five categories of 'new value' . . . enumerated in § 547(a)(2)." *Id.* The Court found that the only benefit the supplier showed the debtor was given, the extinguishment of its debt as part of the contemporaneous exchange for the transfers, did not fit within any of the five new-value categories. *Id.* Further, the Court stated "assuming *arguendo* that the transfers were part of a contemporaneous exchange for new value, [the supplier] *produced no evidence that the [d]ebtor and [the supplier] intended that would be the case*." *Id.* (emphasis added).

The Defendant relies on *O'Rourke v. Seaboard Surety Co.* (*In re E.R. Fegert, Inc.*), 887 F.2d 955 (9th Cir. 1989) ("*Fegert*") and contends that when faced with a similar factual scenario as to the current case, the Ninth Circuit held that the debtor-contractor's prepetition payments to subcontractors involved a contemporaneous exchange of new value because by paying the subcontractors, the debtor avoided the surety's automatic and equitable lien. *Id.* at 959. In *Fegert*, the debtor-contractor defaulted on its payments to two of its subcontractors. *Id.* at 956. The subcontractors initiated suit against the

debtor and the surety company that had executed a payment and performance bond on behalf of the debtor, as principal. *Id.* Prior to the trial, the debtor paid the subcontractors an amount that satisfied the debt. *Id.* The suits were then dismissed with prejudice. *Id.* Within ninety (90) days of its payments to the subcontractors, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. *Id.* The case was subsequently converted to Chapter 7. *Id.* The trustee initiated an adversary proceeding seeking to recover the payments as preferential payments. *Id.* The bankruptcy court granted summary judgment against the trustee, the Bankruptcy Appellate Panel and the Ninth Circuit affirmed. *Id.* at 956-957. The Ninth Circuit found that if the debtor had not paid the subcontractors in full, the subcontractors would have been paid by the surety, who would then have an equitable lien against the contract balance. *Id.* at 959. The Ninth Circuit held the release of the surety's security interest constituted "new value" contemporaneously received by the debtor. *Id.*

In the present case, the Debtor remitted three payments to the Defendant between June 22, 2009 and July 31, 2009 in payment of invoices which the Defendant issued to the Debtor between January 15, 2009 and April 30, 2009 for materials delivered to the Debtor. The Defendant issued thirty-three (33) other invoices to the Debtor dated between February 17, 2009 and August 31, 2009 in the cumulative amount of $60,021.82 for materials delivered to the Debtor at the projects, which the Debtor did not pay.

The Defendant submitted the affidavit of Cheryl F. Williams, who is employed by the Defendant as a Case Administration Manager. The affidavit states that based on the Debtor's non-payment, the Defendant issued letters to Hanover on September 19, 2009 and October 7, 2009, advising of the Defendant's claims against the payment bonds issued by Hanover as surety for the Debtor. The affidavit further states, when the Debtor failed to pay the Defendant's claims the Defendant filed four lawsuits against Hanover in the General Courts of Justice, Superior Court

9

Division for Mecklenburg, Orange, Wake, and Forsyth Counties between November 19, 2009 and November 20, 2009 to prosecute the bond claims. The Defendant represents that its bond claims included every invoice issued to the Debtor, which the Debtor had failed to pay. Additionally, the affidavit represents that in the course of its ordinary business, the Defendant asserts claims against available payment bonds and files lawsuits to assert its claims against available payment bonds in the event of non-payment by a customer, but provides no other specific examples. Subsequently, Hanover paid the Defendant in full for its claims on the payment bonds. Accordingly, the Debtor executed bond releases for the amounts paid by Hanover in satisfaction of the unpaid invoices.

The Trustee responds that the Defendant has failed to sufficiently show that at the time of the transfers it would have asserted bond claims had it not received payment. The Trustee contends, the Defendant only took steps to make a claim on the bond after the Debtor filed bankruptcy, almost three months after the first transfer and two months after the last transfer, when it was clear that the Defendant would have to file on the bond to recoup any funds or wait for a lesser distribution through an unsecured claim in the bankruptcy case. Further, the Trustee contends, there was no transfer "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and in fact a substantially contemporaneous exchange" as contemplated by the Bankruptcy Code and the Fourth Circuit in *United Rentals*. 11 U.S.C. § 547(c)(1); *United Rentals*, 592 F.3d at 533. Further, the Trustee distinguishes the *Fegert* case relied on by the Defendant. The Trustee notes that the payments made in *Fegert* that the trustee was seeking to set aside, were those paid in settlement of a debt that resulted in the dismissal of the suit and release of the bond claims. Accordingly, the Trustee contends the payments were in fact made contemporaneously. In this case, the Trustee contends, there is no evidence that the payments were intended by the debtor and creditor to be a contemporaneous exchange.

10

Viewing all of the facts and all of the reasonable inferences in the light most favorable to the Trustee, the Court finds there are genuine issues of material fact with respect to whether the transfers are not avoidable pursuant to 11 U.S.C. § 547(c)(1) and the "indirect transfer" theory. There are genuine issues of material fact with respect to whether the Debtor and the Defendant intended the transfers to be part of a contemporaneous exchange. The Defendant introduced evidence, including an affidavit, for the purpose of establishing that the *Defendant* intended the transfers to be a part of a contemporaneous exchange, but failed to allege any facts establishing that the *Debtor* intended the transfers to be a part of a contemporaneous exchange of new value. As noted in *United Rentals*, when analyzing the "indirect transfer" theory, the Defendant must show new value was given to the debtor as part of a contemporaneous exchange and must set forth evidence that the Debtor and the Defendant intended that would be the case. *United Rentals, Inc. v. Angell*, 592 F.3d 525 at 533. In *Fegert*, this was the case. The debtor and surety made payments that satisfied the debt and resulted in dismissal of the case and release of the bond claim. The exchange at issue in *Fegert* happened contemporaneously within the context of the lawsuit. In *Fegert*, lawsuits against the bond were filed before payments were made. Payments were made contemporaneously with the release of the bond claims. There is no evidence here that the Debtor intended the preferential payments to be a contemporaneous exchange for new value, i.e. the release of the bond claims.

Additionally, at this point it cannot be determined whether the Defendant would have timely filed a claim against the project's payment bond had the Debtor not filed for bankruptcy. Although, the Williams' affidavit states it is part of the Defendant's ordinary course of business to file a claim against the project's payment bond, there is no other evidence supporting this contention. Therefore, the Court finds genuine issues of material fact with respect to this issue.

**II. Ordinary Course of Business Defense:**

11

The Defendant asserts that the preferential transfers are not avoidable pursuant to 11 U.S.C. § 547(c)(2) because the payments were made in the ordinary course of business. 11 U.S.C. § 547(c)(2) provides a transfer is not avoidable:

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business . . . and such transfer was -
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). Courts must engage in a "peculiarly factual" analysis when determining whether payments were made in the ordinary course of business under Section 547(c)(2). *Harman v. First Am. Bank of Md.* (*In re Jeffrey Bigelow Design Group, Inc.*), 956 F.2d 479, 486 (4th Cir. 1992). The Defendant has the burden of proving that the preferential transfers were made in the ordinary course of the debtor's business by a preponderance of the evidence. 11 U.S.C. § 547(g).

Courts have considered various "factors" when determining whether payments are ordinary between the parties: (1) the length of time the parties were engaged in the transaction at issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) the circumstances under which the payment was made. 5 Collier on Bankruptcy (16th ed. rev.) ¶ 547.04 [2][a][ii] (citation omitted). "The vast majority of ordinary course of business cases deal with payments that are made later than the express written terms require." *Id.*

Both the Trustee and Defendant acknowledge that the transfers were in payment of a debt incurred by the Debtor in the ordinary course of business. The question remains as to whether the transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee; or made according to ordinary business terms.

The Defendant asserts that there are no genuine issues of material fact that the sales made to the Debtor and the corresponding payments received were within the regular and ordinary course of business between the Debtor and the Defendant, and the invoices in question were in accordance with ordinary business terms.

The Trustee contends that the payment history between the Debtor and Defendant establishes that an average of days from invoice date to payment ranged between 76.7 days and 80.6 days (depending on whether you include finance charges, and a payment made substantially late that was within days of the beginning of the preference period when the Debtor was in financial distress). The Trustee relies on a payment ledger kept by the Defendant and provided to the Trustee through discovery which shows, the transfer made by Debtor's check number 33939 paid invoice numbers 59589, 59590 and 59641, being 158, 158 and 142 days from invoice date respectively. The Trustee contends, that according to the ledger, the transfer made by Debtor's check number 34087 paid invoice number 59833, being 127 days from invoice date. Finally, the Trustee contends that according to the ledger, the transfer made by Debtor's check number 34428 paid invoices numbered 59719, 59892, 60028 and 60029, being 166, 122 and 92 days from invoice date respectively.

Based on this, the Trustee argues that the transfers were substantially later than those payments which established the baseline of dealing between the Defendant and Debtor prior to the preference period. As a result, the Trustee contends the transfers were made outside of the ordinary course of business.

The Defendant responds that the Trustee's analysis is flawed, because it compares only four months worth of invoices and payments (the payments paid invoices issued between January 2009 and April 2009) against nearly two years worth of payments (invoices issued between March 2007 and December 2008). The Defendant provides an analysis of the data which indicates the average time it

13

took the Debtor to pay the Defendant's invoices in the ordinary course of the parties' business showed a pattern of significant increase over the three, six-month periods preceding 2009. Further, in each of those six-month periods, the maximum time that it took the Debtor to pay some invoices was greater than the amount of time it took the Debtor to remit some of the payments in the ninety (90) days prior to the Debtor filing its bankruptcy petition. Accordingly, the Defendant contends the increasing average amount of time it took the Debtor to remit the payments was entirely in keeping with the Debtor's ordinary course of continually increasing the time it took to pay the Defendant's invoices. Therefore, the Defendant contends it has sufficiently established a complete "ordinary course" defense under 11 U.S.C. § 547(c)(2).

At this stage, the Court cannot determine whether the transactions are consistent with the past practices between the parties without additional information regarding the specific pre-preference period transfers. An important factor in determining whether the payments were made in the ordinary course of business, is whether there were changes in timing of the payments from the Debtor to the Defendant. While payments made late may indicate they were not made within the ordinary course of business, there are circumstances where such late payments may be considered to be in the ordinary course of business between the parties. The Court needs more factual information regarding the relationship that existed between the parties themselves. Testimony from a representative of the Debtor and the Defendant will be highly relevant as to the ordinary course of business between the Debtor and the Defendant. Therefore, a genuine issue of material fact exists with respect to this issue.

## CONCLUSION

Based on the foregoing, the Court finds that the Trustee's motion for summary judgment is **GRANTED** with respect to establishing the elements under 11 U.S.C. § 547(b). The Trustee's motion for summary judgment is **DENIED** with respect to the Defendant's claimed defenses. The

Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part. The Court holds the Defendant is **GRANTED** partial summary judgment with respect to its "new value" defense under 11 U.S.C. § 574(c)(4) as to $4,944.12 of the transfers. Based on the parties representations, the Court finds there are no triable issues of fact that would support the Trustee's assertions that the transfers constitute fraudulent transfers subject to avoidance pursuant to 11 U.S.C. § 548(a)(1)(B) and this cause of action is **DISMISSED**. Therefore, the Defendant is **GRANTED** summary judgment with respect to the Trustee's claim under 11 U.S.C. § 548(a)(1)(B). The Defendant's motion for summary judgment is **DENIED** with respect to its defenses under 11 U.S.C. § 547(c)(1) and 11 U.S.C. § 547(c)(2). Therefore, the only remaining issues for trial are: whether the preferential transfers are excepted from avoidance by the Trustee pursuant to the "indirect transfer" theory under 11 U.S.C. § 547(c)(1); and whether the preferential transfers are excepted from avoidance by the Trustee pursuant to the ordinary course of business defense pursuant to 11 U.S.C. § 547(c)(2).

**SO ORDERED.**

**END OF DOCUMENT**